1
2
3
4
5
6                    IN THE UNITED STATES DISTRICT COURT
7                       FOR THE DISTRICT OF ARIZONA
8  JULIO HERNANDEZ,                    )
                                       )
9              Plaintiff,              )
                                       )
10  vs.                               )        No. CIV 05-364-TUC-CKJ
                                       )              **ORDER**
11  FRITZ ENTERPRISES, INC., et al.,   )
                                       )
12             Defendants.             )
                                       )
13  ─────────────────────────────────

14        Pending before the Court are the parties' Motions for Summary Judgment [Doc. # 74,
15  80, and 117].  The parties presented oral argument on June 15, 2007, and June 18, 2007.
16
17  *Factual and Procedural Background*
18        Fritz Enterprises, Inc., ("Fritz") is a steel mill service that recovers scrap metal in steel
19  mills for remelting.  Fritz owns 50% of the stock of HVF West L.L.C. ("HVF"), a steel
20  recycling plant located in Tucson, Arizona.  Fritz has contracted with the Defense
21  Reutilization and Marketing Office ("DRMO") of the United States of America ("USA" or
22  "the government") to purchase scrap metal including weapon components.
23        Under contract number 31-1638, Fritz contracted with the DRMO to purchase scrap
24  that required demilitarization.[1]  The material was transported to HVF and were demilitarized
25  by HVF under the direction of a DRMO employee.  Pursuant to the contract, title did not pass

27
28        [1]For purposes of its motion, Fritz asserts that it was the party that contracted with the
    government.  However, Fritz asserts that it entered into the contract on behalf of HVF.

to Fritz until after the item was demilitarized.  The Defense Demilitarization Manual provides that demilitarization of hydro pneumatic recoil and equilibrator mechanisms, such as those in the gun mount, requires draining the mechanism's reserve oil and releasing its nitrogen pressure.  Bowen Glover, who worked for the DRMO, testified at deposition that if the documents did not indicate that the lines had been purged, policy dictated that the object should be returned.

Fritz' purchase included a gun mount; it was delivered to HVF on March 6, 2003. The DRMO employee confirmed that the gun mount was demilitarized.

On February 7, 2004, Plaintiff Julio Hernandez ("Hernandez") was employed by HVF.  Hernandez reduced large steel components into smaller pieces for recycling, using an oxy-acetylene cutting torch.  Hernandez was assigned to cut up the gun mount at HVF's yard. As Hernandez cut the gun mount, the torch heated the hydraulic fluid in a line inside.  The fluid exploded into flame and set Hernandez on fire, causing second and third degree burns over 50% of his body.

On August 24, 2005, Hernandez filed an Amended Complaint alleging Defendants Fritz and USA were negligent and strictly liable for Hernandez' injuries.

Each party has filed a Motion for Summary Judgment.

*Summary Judgment Standard*

A party moving for summary judgment has the initial burden to demonstrate, "with or without supporting affidavits[,]" the absence of a genuine issue of material fact and that judgment as a matter of law should be granted in the moving party's favor.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553 (1986), quoting Fed.R.Civ.P. 56.  A material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510 (1986).  The facts material in a specific case are to be determined by the substantive law controlling a given case or issue. *Id.*

Once the moving party has met the initial burden, the opposing party must "go beyond

the pleadings" and "set forth specific facts showing that there is a genuine [material] issue for trial." *Id.,* internal quotes omitted. In opposing summary judgment, plaintiff is not entitled to rely on the allegations of his complaint, Fed.R.Civ.P. 56(e), or upon conclusory allegations in affidavits. *Cusson-Cobb v. O'Lessker*, 953 F.2d 1079, 1081 (7th Cir. 1992). Further, "a party cannot manufacture a genuine issue of material fact merely by making assertions in its legal memoranda." *S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines) v. Walter Kiddle & Co.*, 690 F.2d 1235, 1238 (9th Cir. 1982). The party responding to a motion for summary judgment can withstand the motion only by making a showing sufficient to establish a genuine issue of fact regarding those elements and showing that the dispute properly may be resolved only by the fact-finder because it could reasonably be resolved in favor of either party. *Celotex*, 477 U.S. at 321, 106 S.Ct. at 2551-52. The responding party must present specific facts in support of its contentions and must support these facts by proper evidentiary material, which show that a fact-finder could reasonably find in the responding party's favor; the responding party cannot merely rest on its pleadings. Fed.R.Civ.P. 56(e). *See also T.W. Elec. Service, Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir.1987) (citations omitted).

The Court is not to make credibility determinations with respect to the evidence offered and is required to draw all inferences in a light most favorable to the non-moving party. *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630-31 (9th Cir. 1987), citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Summary judgment is not appropriate "where contradictory inferences may reasonably be drawn from undisputed evidentiary facts[.]" *Hollingsworth Solderless Terminal Co. v. Turley*, 622 F.2d 1324 (9th Cir. 1980).

*Defendant USA's Motion for Summary Judgment* [Doc. # 117]

*Strict Liability*

The government asserts that this Court does not have subject matter jurisdiction over this matter. As a sovereign entity, the USA "is immune from suit save as it consents to be

1   sued . . . and the terms of its consent to be sued in any court define that court's jurisdiction
2   to entertain that suit." *Lehman v. Nakshian*, 453 U.S. 156, 160 (1981), *quoting United States*
3   *v. Testan*, 424 U.S. 392, 399 (1976).  The FTCA's waiver of immunity is limited to causes
4   of action against the government arising out of certain torts committed by federal employees
5   acting within the scope of their employment.  *United  States v. Orleans*, 425 U.S. 807, 813
6   (1976).  The United States Supreme Court has found that the FTCA requires a negligent act.
7   *Dalehite  v.  United  States*, 346 U.S. 15, 44-45, 73 S.Ct. 956 (1953); *see also*
8   Am.L.Prod.Liab.3d § 5:49 (2007).

9        Moreover, the Supreme Court rejected absolute liability under the FTCA for
10  ultrahazardous activity undertaken by the government.  *Dalehite* (no absolute liability under
11  the FTCA for chemical explosion); *Laird v. Nelms*, 406 U.S. 797, 801 (1972) (liability for
12  sonic booms not available under FTCA).  The Ninth Circuit Court of Appeals has similarly
13  stated that actions "against the United States arising in strict or absolute liability for
14  ultrahazardous activities are not actionable." *Borquez v. United States*, 773 F.2d 1050, 1052
15  (9th Cir. 1985).

16       Hernandez argues, however, that the FTCA provides that the government is liable for
17  injury caused by its employees' "negligent or wrongful act or omission" 28 U.S.C. §
18  1346(b)(1), and that canons of statutory construction require determining that "wrongful"
19  means something other than "negligent."   However, in *Dalehite*, the Supreme Court
20  specifically addressed the argument that the use of the word "wrongful" implies something
21  in addition to negligence is covered and found that the FTCA could not apply to liability
22  without fault, i.e., strict liability.  346 U.S. at 45, 73 S.Ct. at 972-73; *see e.g., Nottingham,*
23  *Ltd. v. United States*, 741 F.Supp. 1447 (C.D.Cal. 1990) (wrongful conduct may include
24  trespass or conversion).  Therefore, summary judgment in favor of the government is
25  appropriate as to Hernandez' claim of strict liability.

26

27  *Negligence – Duty of Care*

28       The government also asserts that it did not have a duty of care, under Arizona law,

such that Hernandez can establish negligence.[2]  The Supreme Court of Arizona has held that whether a defendant owes a plaintiff a duty of care is a threshold legal issue for a court to determine. *Gipson v. Kasey*, 214 Ariz. 141, 143, 150 P.3d 228, 230 (2007).  Absent a duty, an action for negligence cannot be maintained. 214 Ariz. at 143-44, 150 P.3d at 230, 232-33.  The government asserts that there was no relationship between the USA and Hernandez which would support a duty of care.  The government further asserts there is no other basis for imposing a duty.

A duty is an "'obligation, recognized by law, which requires the defendant to conform to a particular standard of conduct in order to protect others against unreasonable risks of harm." *Gipson v. Kasey*, 214 Ariz. at 143, 150 P.3d at 230, *quoting Markowitz v. Ariz. Parks Bd.*, 146 Ariz. 352, 354, 706 P.2d 364, 366 (1985).  In determining whether a defendant has a duty of care to a plaintiff,  the court is to consider the relationship of the parties. *Gipson*, 214 Ariz. at 145, 150 P.3d at 232.  This should not be a fact-specific inquiry. *Id.*  Where there is no preexisting or direct relationship between the parties, public policy should be considered in determining whether there is a duty – e.g., Arizona statutes or common law may provide a basis for a duty of care.[3] *Id.*, 214 Ariz. at 146, 150 P.3d at 233.  Furthermore, in determining whether there is a duty of care, foreseeability is not a factor. *Gipson*, 214 Ariz. at 144, 150 P.3d at 231.

Without looking at the specific facts (e.g., the sale of a weapon that has not been demilitarized), the Court should consider whether a duty of care should be extended to a buyer from the original seller where there is an intervening seller.  This is the circumstance

---

[2]In making this assertion, the government first asserts that the claim of negligence has not been asserted in the Amended Complaint.  However, the Amended Complaint specifically alleges that each of Defendants were negligent in failing to warn of the hazards associated with the foreseeable dismantling of the subject gun mount and that this negligence was a proximate cause of Hernandez' injuries and damages.

[3]The Supreme Court of Arizona has stated that "governmental tort liability is coextensive with the liability of private actors." *Doe v. State*, 200 Ariz. 174, 175, 24 P.3d 1269, 1270 (2001).

in which strict liability may be imposed and generally does not support a finding of a duty of care.  However, as asserted by Hernandez, every person is under a duty to avoid creating situations that pose an unreasonable risk of harm to others under Arizona law.  *Ontiveros v. Borak*, 136 Ariz. 500, 509, 667 P.2D 200, 209 (1983).  A duty of care exception to a general duty of care should only be granted where a public benefit is gained from a no-duty rule.  *Gipson*, 214 Ariz. at 35, 150 P.3d at 234.  Citing the Alaska Supreme Court, the Supreme Court of Arizona recognizes that the public policy of a duty, "which everyone owes to society and to law[, is] entirely apart from any statute."  *Ontiveros*, 136 Ariz. at 509, 667 P.2d at 209.  The Court recognized the duty as adopted by common law.  *Id.*, 136 Ariz. at 511, 667 P.2d at 211.  In discussing the public policy of Arizona (in the context of immunity), the court further stated that "governmental liability is the rule in Arizona[.]"  *Gipson*, 214 at 176, 24 P.3d at 1271.

This case does not present a situation where a "no duty of care exception" would provide a public benefit.  Rather, the government is under a duty to avoid creating situations that pose an unreasonable risk of harm to others under Arizona law.  *Ontiveros*, 136 Ariz. at 509, 667 P.2d at 209.  Hernandez is alleging that the government's active malfeasance posed an unreasonable risk of harm to others, rather than the government's nonfeasance.  Summary judgment on Hernandez' claim of negligence against the government is not appropriate.

*Defendant Fritz' Motion for Summary Judgment* [Doc. # 74]

*Plaintiff Hernandez' Motion for Summary Judgment* [Doc. # 80]

To establish a claim of strict liability, a plaintiff must show that "'the product is defective and unreasonably dangerous; *the defective condition existed at the time it left defendant's control*; and the defective condition is the proximate cause of the plaintiff's injuries and property loss.'"  *Dietz v. Waller*, 141 Ariz. 107, 110, 685 P.2d 744, 747 (1984), *quoting Rocky Mountain Fire and Casualty Co. v. Biddulp Oldsmobile*, 131 Ariz. 289, 292, 640 P.2d 851, 854 (1982).  Arizona has adopted the strict liability rule of the Restatement (Second) of Torts § 402A (1965) ("Restatement §402A").. *Jimenez v. Sears, Roebuck and*

1  *Co.*, 183 Ariz. 399, 904 P.2d 861 (1995), *citing O.S. Stapley Co. v. Miller*, 103 Ariz. 556,

2  559-60, 447 P.2d 248, 251-52 (1968); *see also Antone v. Greater Arizona Auto Auction*, 214

3  Ariz. 550, 155 P.3d 1074 (App. 2007).  Accordingly,

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

    (a) the seller is engaged in the business of selling such a product, and
    (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) The rule stated in Subsection (1) applies although
    (a) the seller has exercised all possible care in the preparation and sale of his product, and
    (b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

11  Restatement § 402A.

12

13  *Gun Mount as a Product*

14      Whether or not an object in a product is a question of law.  *Menendez v. Paddock Pool*

15  *Construction Co.*, 172 Ariz. 258, 262, 836 P.2d 968, 972 (App. 1991).  "[P]ublic policy

16  reasons are appropriate factors for case-by-case determination whether a structure is a

17  product with [the strict liability doctrine]."  *Id.*, at 264, 836 P.2d at 974.  The Court of

18  Appeals of Arizona has summarized the public policy reasons as cost-shifting, public safety,

19  and recovery policies.  *Id.*, at 265, 836 P.2d at 975.  Although the *Menendez* analysis was in

20  the context of construction, the theories may be applied to this case.

21      In considering cost-shifting, the Court is to consider the uniqueness of the structure.

22  The theory behind this consideration is that, if an injury results "from the defective

23  construction, its cost should be borne by the responsible developer who created the danger

24  and who is in the better economic position to bear the loss rather than by the injured party

25  who justifiably relied on the developer's skill and implied representation."  *Id.*, at 266, 836

26  P.2d at 976.  Although it may be assumed that the gun mount was mass-produced, such a

27  showing has not been made.  In other words, a material factual issue has not been presented

28  as to this issue.  This factor, therefore, weighs against the gun mount being a product.

1   Hernandez asserts, however, that the gun mount was, as a commodity product for the purpose
2   of demilitarization and recycling, a product. In this context, Fritz was a mass-dealer in scrap
3   metal items to be demilitarized and recycled (including the gun mount). Nonetheless, during
4   oral argument, Hernandez asserted that the gun mount had, in effect, been sold as an
5   individual item – it was listed individually and Hernandez has pointed out that Fritz had the
6   option to refuse each individual product. Moreover, Fritz argued that the gun mount was not
7   a used product; rather, the gun mount was to be used for "parting out." In other words,
8   Hernandez was not using the structure as a gun mount, where he may justifiably rely on the
9   developer's skill and implied representation. Hernandez was not using the product, he was
10  dismantling and destroying it.

11          Hernandez also asserts that Fritz is better able to shoulder and distribute the burden
12  of injuries than an individual worker like Hernandez. Hernandez asserts that, as 50%
13  shareholder in HVF, Fritz received profits from HVF. Hernandez has not provided any
14  authority, however, for his apparent proposition that, as a shareholder, the liability should be
15  the same as a seller. Fritz emphasizes that this is not a case where Fritz placed mass-
16  produced items into the stream of commerce. Fritz further asserts that any cost-shifting
17  should not be to Fritz who did not pay for the material or receive a profit from the material.
18  After briefing on this issue was completed, the Court of Appeals of Arizona stated that it "is
19  difficult to conceive of a case where the consumer would ever be best able to bear both the
20  cost and the risk associated with a defective product." *Antone*, 214 Ariz. at 554, 155 P.3d
21  at 1078. It appears, therefore, that this consideration should not be given significant weight.

22          In considering public safety, regulations may limit such consideration. In this case,
23  Hernandez refers to demilitarization regulations and manuals. Hernandez also asserts that
24  imposing strict liability on Fritz serves the interests of public safety by encouraging Fritz and
25  other dealers to honor and heed safety obligations under governmental demilitarization
26  contracts. Fritz asserts, however, that since it was not the manufacturer of the object, strict
27  liability will not induce improvements in the production. Further, Fritz asserts that HVF was
28  aware of the potential hazards, HVF was the party that reviewed the contracts and assumed

the responsibility of training its employees regarding the hazards of torching scrap metals.

The *Menendez* court placed special emphasis on whether there was an adequate alternate remedy, e.g., a negligence claim.  In *Menendez*, plaintiffs had an adequate remedy through negligence counts against defendants and did not have difficulty of access to a remote manufacturer.  Hernandez argues that the burden of proving negligence regarding this defective product is just as difficult and expensive as other strict liability cases.  Indeed, Hernandez asserts that trying to obtain information from government military agencies regarding gun mounts and demilitarization exemplifies the type of situation to which public policy dictate strict liability should be applied.  He also asserts that contracting evidence shows how hard it would be to establish negligence: a civilian DRMO employee testified that safety protocols should have been completed by military personnel while the USA has alleged that applicable safety functions should have been completed by Fritz.  Fritz asserts, however, that this does not involve a case where the manufacturing process is at issue; the policy considerations such as access to a manufacturer and the manufacturing process is irrelevant.[4]  Fritz additionally asserts that Hernandez has adequate remedies available to him: worker's compensation[5] and negligence claims against Fritz and the government.

The Court finds that the gun mount is not a product as envisioned by Restatement § 402A.  The gun mount was not mass-produced as a recyclable product and Hernandez has

---

[4]The reason for placing responsibility on a retailer and wholesaler is so that they may act as a conduit through which liability may flow to the manufacturer, where ultimate responsibility lies.  *Lechuga, Inc. v. Montgomery*, 12 Ariz.App. 32, 37-38, 467 P.2d 256, 261-62 (1970).  Fritz asserts that Hernandez cannot pursue the manufacturer because the object was not being used as a gun mount but as scrap metal.  Fritz appears to be arguing that public policy would not be supported by determining the gun mount was a product. However, the Court of Appeals of Arizona has found that a seller of used goods is still an integral part of the marketing system and imposing strict liability will result in increased maintenance and inspection of used goods.  *Jordan v. Sunnyslope Appliance Propane & Plumbing Supplies Co.*, 135 Ariz. 309, 660 P.2d 1236 (1983).

[5]Hernandez points out that Arizona's worker's compensation system facilitates and encourages seeking recovery from third parties.  A.R.S. § 23-1023.

not shown that, as a shareholder, Fritz should bear the burden of the injury.  Moreover, imposing strict liability on Fritz would not serve the interests of public safety by encouraging Fritz and other dealers to honor and heed safety obligations under governmental demilitarization contracts – Fritz was not the manufacturer of the object and it was allegedly HVF that reviewed the contracts and assumed responsibility regarding the hazards of the object.  Additionally, Hernandez has alternate remedies available to him.  Although Arizona recognizes that strict liability may be applicable to used products, *Jordan v. Sunnyslope Appliance Propane & Plumbing Supplies Co.*, 135 Ariz. 309, 314, 660 P.2d 1236, 1241 (App. 1983), the gun mount in this case was not a used product, but was scrap or salvage material. *See Jordan*, 135 Ariz. at 314 n. 3, 660 P.2d at 1241.  Summary judgment on this issue in favor of Fritz is appropriate.

*Fritz Engaged in the Business*

As stated by the Restatement of Torts:

> (1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
>
>> (a) the seller is engaged in the business of selling such a product, and
>> (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

Restatement § 402A.  Hernandez asserts that Fritz is such a seller: Fritz is a scrap metal dealer that has been in the business of recovering and recycling scrap metal for decades.  It has repeatedly purchased materials through contracts with the DRMO.

Relying on *Jordan*, Hernandez asserts that it is immaterial that Fritz deals in used products.  However, Fritz asserts that a dealer in used products is not liable in strict products liability, relying on *Rix v. Reeves*, 23 Ariz.App. 243, 532 P.2d 185 (1975); *see also Pridgett v. Jackson Iron & Metal Co.*, 253 So.2d 837 (Miss. 1971) (doctrine of strict liability not extended to include seller of scrap iron).  Fritz does not acknowledge, however, that *Rix* was limited to its facts and was not meant to imply that there was never liability when used

- 10 -

products were sold. *Jordan*, 135 Ariz. at 314, 660 P.2d at 1241.  Indeed, *Rix* involved a tire rim of unknown age and use.  Here, the parties all knew that the history of the product involved its use as a weapon.  Moreover, the tire rim in *Rix* was comparable with other salvaged tire rims; there is no information before the Court that other "used" gun mounts were in the same condition.  The Court finds that Fritz was a seller engaged in the business of selling used products and that such a seller falls within the class contemplated by Restatement § 402A.  Summary judgment on this issue is not appropriate.

*Substantial Change in Condition*

Hernandez asserts that the gun mount reached him, the ultimate consumer, from Fritz, without substantial change in its condition.  The gun mount was sold by the government for demilitarization and recycling; Fritz purchased the gun mount knowing its condition and sold it to HVF in the same condition.  Further, Hernandez asserts that he used the gun mount for the ultimate purpose for which the government and Fritz intended it to be used.  Hernandez also asserts that the mere fact that he was processing the gun mount for recycling does not excuse the strict liability.  Restatement § 402A, comment p.  For purposes of this motion, Fritz does not dispute that the scrap metal was transferred from DRMO to HVF without any substantial change in its condition, with the exception of the demilitarization process.

*Defective Condition Unreasonably Dangerous*

A product is defective and unreasonably dangerous if it fails to perform as safely as an ordinary consumer would expect when used in an intended or reasonable manner.  *Dart v. Wiebe Manufacturing*, 147 Ariz. 242, 245, 709 P.2d 876, 879 (1985).  The product defect must have existed when the product left the defendant's control.  *Menendez*, 172 Ariz. at 261, 836 P.2d at 971.  Hernandez asserts that he has presented evidence that the gun mount was in a defective condition and it was unreasonably dangerous: DRMO classifies such items as dangerous; DRMO acknowledges that products such as the gun mount are inherently hazardous and dangerous and products such as the gun mount are classified as lethal

material; a DRMO employee acknowledged the combination of hydraulic fluid and nitrogen is particularly explosive; and a DRMO employee agreed that demilitarization of products like the gun mount by torch cutting is hazardous. Hernandez asserts that no evidence, including expert testimony, has been presented to dispute this fact.

Fritz asserts that it had disclosed an expert that has opined that the gun mount was neither defective nor was it unreasonably dangerous. Fritz asserts a question of fact has been presented as to this issue. Hernandez asserts in his Reply that, although a section of the expert report was entitled whether the gun mount was defective and unreasonably dangerous, he did not offer an opinion as to the gun mount's inherent characteristics.

Furthermore, because Hernandez is not alleging either a design or manufacturing defect, Fritz asserts Hernandez is asserting an informational defect encompassing instructions and warnings. *Gosewisch v. American Honda Motor Co.*, 153 Ariz. 400, 403, 773 P.2d 376 (1987). Fritz asserts that HVF was fully aware of the potential hazards involved in the scrap metal transferred from the government and, indeed, was specifically warned by the DRMO that there was a hydraulic line in the gun mount. Additionally, Fritz asserts that Hernandez was trained on how to cut into metals containing hydraulic equipment as well as how to check the lines. Fritz asserts that, because HVF and Hernandez had ample warning of the potential hazards, there was no defective condition unreasonably dangerous.

In his Reply, Hernandez asserts that his strict liability claim is grounded in design, manufacturing and informational defects, not merely in warnings. He further asserts that Fritz' assertions of comparative fault are irrelevant to the fact that the gun mount is defective as a matter of law.

The Court finds a factual issue has been presented as to whether the gun mount is defective and unreasonably dangerous. The parties have presented conflicting evidence whether the gun mount was hazardous. However, for the reasons stated, *infra*, regarding th Court's determination that the gun mount is not a product, summary judgment in favor of Fritz is appropriate.

1    *Causation of Physical Harm to Hernandez*

2            Hernandez asserts that, as a matter of law, the defective and unreasonably dangerous

3    gun mount caused his injuries; he asserts that there is no genuine issue of material fact.  Fritz

4    relies on *State Farm Insurance Co. v. Premier Manufactured Systems, Inc.*, 213 Ariz. 419,

5    142 P.3d 1232 (App. 2006), for the assertion that the principles of comparative fault are

6    applicable to the participants in the chain of distribution of an allegedly defective product.

7    A trier of fact may find that the other involved parties (the government, HVF, and

8    Hernandez) bear the fault.  Indeed, the Court of Appeals of Arizona concluded that the

9    Arizona legislature "abolished joint and several liability except in certain situations, none of

10   which are applicable here."  *Id.* at 423, 142 P.3d at 1236.  "[T]he plain language of A.R.S.

11   § 12-2506 requires the fault of all members of the distribution chain to be compared and

12   allocated."  *Id.*, at 423-24, 142 P.3d at 1236-37.  It is a defendant's burden to negate its

13   responsibility.  *Id.*, at 426, 142 P.3d at 1239.

14           The parties rely on conflicting cases.  Defendant relies on *Pridgett* for the assertion

15   that scrap metal dealers are not subject to strict liability.  However, that court found that the

16   doctrine of strict liability, under the facts of that case, should not apply to that seller of scrap

17   iron.  It was not a sweeping proposition, but factually specific.  Plaintiff relies on *Ferragamo

18   v. Massachusetts Bay Transportation Authority*, 481 N.E.2d 477 (Mass. 1985), wherein strict

19   liability was applied to the seller of scrap metal (trolley cars).  That case, however, relied on

20   the seller being a merchant of used trolley cars, not scrap metal.

21           There being a genuine issue of material fact as to whether the gun mount was in a

22   defective condition unreasonably dangerous, the Court cannot state that the "defective"

23   condition was the proximate cause of Hernandez' injury.  Summary judgment is not

24   appropriate on this issue.

25

26           Accordingly, IT IS ORDERED:

27           1.      Defendant USA's Motion for Summary Judgment [Doc. # 117] is GRANTED

28   as to Hernandez' strict liability claim.  Defendant USA's Motion for Summary Judgment

1    [Doc. # 74] is DENIED as to Hernandez' negligence claim.

2        2.    Defendant Fritz' Motion for Partial Summary Judgment [Doc. # 74 ] is

3    GRANTED.

4        3.    Plaintiff Hernandez' Motion for Summary Judgment [Doc. # 80] is DENIED.

5        4.    Summary Judgment is granted in favor of Defendants USA and Fritz and against

6    Hernandez as to the strict liability claims.

7        5.    The parties shall submit a Joint Proposed Pretrial Order within thirty (30) days of

8    this Order.

9        DATED this 28th day of September, 2007.

10

11

12                    _____

13                         Cindy K. Jorgenson
                         United States District Judge

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28